# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephanie E. Patnesky, : 
          Petitioner : 
     : 
    v. : No. 591 C.D. 2017
     : Submitted: January 26, 2018
Unemployment Compensation Board : 
of Review, : 
          Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT[1]               FILED: October 29, 2018

       Stephanie E. Patnesky (Claimant) petitions for review of an adjudication of the Unemployment Compensation (UC) Board of Review (Board) that affirmed a Referee's decision that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law).[2]  For the following reasons, we reverse the Board.

       Claimant began working full-time for the Department of Transportation, Bureau of Driver Licensing (Employer) as a Driver's License Examiner Assistant in 2010.  She was suspended on October 7, 2016, and discharged

---

[1] This case was assigned to the authoring judge on June 19, 2018.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which her unemployment is due to her discharge or temporary suspension from work for willful misconduct connected with her work.

on November 2, 2016, for violating Employer's confidentiality policy.[3] Claimant applied for unemployment compensation benefits and denied violating Employer's policy. Based on information provided by Employer, the Duquesne UC Service Center issued a Notice of Determination finding that Claimant disclosed "confidential Department information to unauthorized persons" and, thus, was ineligible for benefits pursuant to Section 402(e) of the Law. Certified Record (C.R.) Item No. 7, at 1. Claimant appealed, and a hearing was conducted by a Referee.

At the hearing, Employer presented the testimony of Ronald Beatty, its western region manager. He testified that Employer's confidentiality policy permits employees to access Department information only to fulfill their job responsibilities. An employee may not access or use confidential Department information for personal reasons or to assist family and friends. She may, however, ask an employee in another unit to assist family and friends. The confidentiality policy also prohibits an employee from accessing or providing Department information to a co-worker so that the co-worker, in turn, can assist his family or friends. Beatty clarified, however, that the confidentiality policy allows an employee to do a transaction for a co-worker's family or friends, so long as the requested transaction is one of the employee's assigned job responsibilities.

Beatty testified that Claimant was discharged for using Department information to produce a replacement identification card for Christopher Beardshall,

---

[3] In the termination letter dated November 2, 2016, Employer advised Claimant that she violated Employer's "Record Information Confidentiality Policy" and "Driver and Vehicles Services Privacy Procedure Document." Certified Record (C.R.) Item No. 4, Service Center Exhibit 8. Both documents were admitted into the record without objection from Claimant. After the hearing, the Referee found that Claimant violated only the "Record Information Confidentiality Policy." Referee Decision at 1-2; Findings of Fact Nos. 2-6. The Board adopted the Referee's findings of fact.

who is the child of her co-worker, Thomas Beardshall, "when the child, the actual customer was not even present at the license center." Notes of Testimony, 12/27/2016, at 11 (N.T. __). When Beatty questioned Claimant at a pre-disciplinary conference, Claimant acknowledged that she signed the confidentiality policy and stated that "she should have known better." N.T. 14. A copy of the confidentiality policy was admitted into the record. On cross-examination, Beatty acknowledged that preparing identification cards was Claimant's job responsibility.

Beatty complained that Claimant did not present the guardianship order in her defense at the pre-disciplinary conference. However, he also acknowledged that he "saw a part of that document" during investigative interviews of Mr. Beardshall. N.T. 16.[4] Beatty also acknowledged that Beardshall is Christopher's legal guardian and has a power of attorney to act on Christopher's behalf. Nevertheless, Beatty believed that Claimant should have sought a supervisor's approval before processing Christopher's application for a replacement identification card.

Claimant testified on her own behalf. Her attorney showed her a copy of a 2014 order of the Allegheny County Court of Common Pleas, admitted into evidence, finding that Christopher Beardshall suffered from pervasive developmental disorder. The court adjudged Christopher "an incapacitated person" and appointed Beardshall as "Permanent Plenary Joint Co-Guardian" along with Christopher's mother. C.R. Item No. 11, Claimant Exhibit 4 at 4. The co-guardians were made responsible for Christopher's "Person" and his "Estate," with the

> authority to marshal [sic] all of Christopher Thomas Beardshall's income and assets, pay his bills and manage his financial affairs

---

[4] Employer investigated Beardshall because he had asked Claimant to issue an identification card for his son. His discipline, if any, is unknown.

as fully as Christopher Thomas Beardshall could do so himself if he had not be [sic] adjudged incapacitated.

*Id.* at 5. Claimant testified that she was aware of this court order, which she referred to as a "power of attorney," through her conversations with Beardshall and because she had processed Christopher's original identification card application when "he first got his picture" taken for the card. N.T. 26. For the initial transaction, Christopher was accompanied by his mother.

Regarding the incident for which she was discharged, Claimant testified that Beardshall, in person, presented an application for Christopher's replacement identification card. Claimant believed Beardshall's power of attorney authorized her to process Christopher's application. Claimant stated that she did not violate or intend to violate Employer's policies. She also testified that she had never been told that she needed a supervisor's approval to process an application presented by a person acting under a power of attorney. When asked why she told Beatty "she should have known better," she stated that a union representative advised her to "admit to everything" at the pre-disciplinary conference, say "you're sorry" and "go on your way." N.T. 29.

The Referee affirmed the UC Service Center's determination that Claimant was ineligible for benefits under Section 402(e) of the Law because she had engaged in willful misconduct.[5] In so holding, the Referee found that Employer's confidentiality policy prohibited an employee from sharing Department information with a co-worker. Claimant was aware of the policy and violated it by accessing Christopher's record information and issuing a replacement identification

---

[5] The Referee found that Claimant received $1,179 in unemployment compensation benefits to which she was not entitled, but concluded that this was a non-fault overpayment pursuant to Section 804(b) of the Law, 43 P.S. §874(b). This part of the decision was not appealed.

4

card for him when he was not physically present. Claimant did so without approval of her supervisor. On these factual findings, the Referee concluded that Employer met its burden of proving that Claimant was discharged for willful misconduct, and the burden shifted to Claimant to show good cause for her conduct.

The Referee concluded that Claimant failed to show good cause because she did not raise the guardianship order during Employer's pre-disciplinary conference. The Referee reasoned that this "mitigates any possible good cause" for her violation of the confidentiality policy. Referee Decision at 4. For the same reason, the Referee discredited Claimant's testimony that she was aware of the guardianship order when she issued the identification card in Christopher's absence. *Id.* The Referee further questioned the authenticity of the guardianship order because neither Beardshall nor Christopher was present at the Referee's hearing to confirm that the order was still in effect when Claimant issued the replacement identification card. Claimant appealed to the Board.

On appeal, the Board adopted the Referee's findings of fact and conclusions of law and affirmed the Referee's order. However, the Board did not adopt the Referee's analysis. It held that it did "not rest its conclusion of law on the authenticity of the [power of attorney] document."[6] Board Adjudication at 1. Rather, the Board determined that Claimant's failure to offer the guardianship order during Employer's pre-disciplinary meeting "vitiates her good cause argument." *Id.* Claimant now petitions for this Court's review of the Board's adjudication.[7]

---

[6] Indeed, the court order is a public record of which an administrative agency can take official notice, as the Referee had acknowledged.

[7] Our review determines whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial competent evidence. *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

5

On appeal, Claimant argues that the Board erred. Claimant asserts that the Board ignored the legal effect of the guardianship order. Further, the confidentiality policy did not require that Christopher be present when Beardshall requested an identification card on his son's behalf under authority of a power of attorney. Likewise, the policy did not require that Claimant consult her supervisor before processing Christopher's replacement identification card; no such rule existed. In short, because Employer failed to prove "the existence of the rule and the fact of its violation," Claimant argues that the Board erred in concluding that Claimant engaged in disqualifying willful misconduct under Section 402(e) of the Law. Claimant Brief at 12.

At the outset, we address the Board's waiver argument, which it makes in virtually every brief it files with this Court. The Board asserts that because the statement of questions in Claimant's brief raises only the issue of whether Claimant committed disqualifying willful misconduct under Section 402(e) of the Law, Claimant cannot challenge the Referee's "findings of fact," which in this case include a statement that Claimant violated Employer's confidentiality policy because Christopher "was not present during the transaction." Referee Decision at 2, Finding of Fact No. 6. By couching the legal conclusion that Claimant violated the policy as a "finding of fact," the Referee attempted to place the proverbial rabbit in the hat. The Board unquestioningly adopted this "finding of fact" and now asserts that the ultimate legal issue in this case is beyond appellate review. This is sophistry. Whether Claimant's actions constituted disqualifying willful misconduct is a question of law fully reviewable by this Court. *Oyetayo v. Unemployment Compensation Board of Review*, 110 A.3d 1117, 1122 (Pa. Cmwlth. 2015). In deciding that legal issue, this Court must determine whether Claimant's actions

violated Employer's policy as was concluded by the Board. We reject the Board's waiver argument and proceed to the merits of Claimant's appeal.

In unemployment cases, the initial burden of proving willful misconduct lies with the employer. *Id.* at 1121. Although not defined in the Law, willful misconduct has been interpreted to include:

> (i) wanton and willful disregard of the employer's interests; (ii) a deliberate violation of the employer's rules; (iii) a disregard of the standards of behavior that the employer rightfully can expect from its employees; and (iv) negligence that manifests culpability, wrongful intent or evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations.

*Id.* Where an employer seeks to deny unemployment compensation benefits based on a work rule violation, the employer must show that the rule existed; that the rule was reasonable; and that the claimant was aware of and violated the rule. *Id.* If the employer makes that showing, the burden shifts to the claimant to show good cause for her conduct. *Id.*

The Board is the ultimate finder of fact and is empowered to make credibility determinations. *Id.* "When the Board's findings of fact are supported by substantial evidence, that is such evidence a reasonable mind might accept as adequate to support a conclusion, those findings are conclusive on appeal." *Id.* at 1122. However, whether an employee's actions constitute willful misconduct is a question of law fully reviewable by this Court. *Id.*

We begin with a review of the policy that Claimant was found to have violated. Employer's Record Information Confidentiality Policy states in pertinent part as follows:

> As an employee, you may access information only when necessary to accomplish the responsibilities of your

7

employment. You may NOT access or use information from PENNDOT/DHS for personal reasons or to assist your family or friends yourself. You must ask another unit that processes that type of transaction to assist your relative or friend. You may NOT access and provide record information to a co-worker so that the co-worker can assist his/her family. *You may help your co-workers' family and friends directly BUT ONLY if the transaction is part of your assigned job responsibilities*.

C.R. Item No. 4, Service Center Exhibit 10 (emphasis added).[8] The Referee found that Claimant violated the confidentiality policy because she obtained Christopher's record information at Beardshall's request and issued an identification card for Christopher when he was not physically present.

The Referee misread the confidentiality policy. It expressly authorizes an employee to "help [a] co-worker['s] family and friends *directly* … if the transaction is part of [the employee's] assigned job responsibilities." *Id*. (emphasis added). Here, Claimant "directly" helped her co-worker's son, Christopher, by issuing him a replacement identification card. It is undisputed that it was Claimant's job responsibility to issue this identification card. The confidentiality policy did not require Christopher's physical presence and, in any event, Christopher would have been unable to request or consent to the transaction because of his disability.[9]

The Board argues that the term "directly" required Christopher to accompany his legal guardian before Claimant could issue his identification card. Board Brief at 10. We reject this construction of the word "directly." The policy provides, simply, that the employee in question do the transaction as opposed to

---

[8] The Record Information Confidentiality Policy was submitted to the UC Service Center and later admitted into the record without objection. *See* N.T. 5-6.

[9] The guardianship order established that Christopher has a Full Scale IQ of 55. His functional limitations include, *inter alia*, an inability to sign documents or to understand what he is signing. He requires 24-hour supervised care and assistance with all activities of daily living. C.R. Item No. 11, Claimant Exhibit 4 at 2-3.

acting "indirectly" by assisting a co-worker to take action. Claimant did not give Beardshall confidential information for him to use. Rather, she used the information to do her job. Stated otherwise, Claimant acted directly, not indirectly, and it was her job responsibility to do so.

The confidentiality policy does not address guardianships or powers of attorney. The Referee discredited Claimant's testimony that when she processed Christopher's application she knew that Christopher was the subject of a guardianship order.[10] The Board argues that, as a result of the Referee's credibility determination, the legal effect of the guardianship order is "immaterial." Board Brief at 12. We disagree. Whether Claimant knew of the guardianship order when she processed Christopher's application is irrelevant.

First, at no point did Employer contend that the guardianship did not exist or was not in effect at the time Claimant issued Christopher a replacement identification card. Beatty, Employer's western region manager, admitted to seeing the order during Employer's investigation.

Second, Employer's willful misconduct charge was based solely on the confidentiality policy. Employer never asserted that it had rules governing the processing of an application for one under a guardianship or that Claimant violated these rules. Beatty did not testify that Claimant should have demanded a copy of the guardianship order before she processed Christopher's application. Rather, Beatty testified that Claimant should have sought her supervisor's approval. He did not

---

[10] The Referee did not make an express credibility determination in the findings of fact but discredited Claimant's testimony in the discussion portion of the decision. Neither the Referee nor the Board took into account the fact, uncontradicted by Employer, that Claimant had a prior experience with Christopher and his other guardian when she issued the identification now sought to be replaced by the requesting guardian.

explain why this approval was needed. It matters not. The confidentiality policy is silent on the processing of applications presented by one acting under a guardianship order and on the circumstances that require a supervisor's approval.

Indeed, the evidence shows that Employer did not interpret its policy as the Board has suggested, *i.e.*, to require the physical presence of an individual subject to guardianship. Beatty explained during cross-examination:

> [Claimant's Counsel]: There is nothing in [Employer's] policies that prohibit the making of an identification card for an individual who is not present when the individual that has the individual's power of attorney requests the identification card in person, correct?
>
> [Beatty]: It can be processed with the supervisor's approval.
>
> [Claimant's Counsel]: And there's nothing in the policy that says you have to get the supervisor's approval first in that case, correct?
>
> [Beatty]: The policy's still applicable in that situation…. I did not research that prior to today.

N.T. 21. In short, Beatty acknowledged that the only presence required is that of the legal representative, not the person subject to guardianship. Beatty testified that Claimant could have processed Christopher's application "with [her] supervisor's approval." *Id.* This testimony reflects, at best, an ambiguity in Employer's policy. It is well established that noncompliance with a work rule in itself does not amount to a "deliberate violation." *Oyetayo*, 110 A.3d at 1121. *See also Chester Community Charter School v. Unemployment Compensation Board of Review*, 138 A.3d 50, 54 (Pa. Cmwlth. 2016) ("[a]n inadvertent or negligent violation of an employer's rule may not constitute willful misconduct.").

10

The Board directs our attention to *Walsh v. Unemployment Compensation Board of Review*, 943 A.2d 363 (Pa. Cmwlth. 2008), where this Court held that a claimant engaged in disqualifying willful misconduct under Section 402(e) of the Law by violating confidentiality policies. In that case, the claimant, a driver license center manager, also employed by Employer, printed out confidential information about an individual romantically involved with the claimant's estranged wife. Employer fired the claimant, and the Board denied the claimant unemployment benefits. This Court affirmed because Employer established the existence of the confidentiality policy; that the policy was reasonable; and that the claimant violated the policy by printing out confidential information for personal reasons. We rejected the claimant's good cause defense.

*Walsh* is distinguishable. Unlike the driver license manager, who printed confidential information for personal reasons, Claimant used Christopher's confidential information to do her job. Her issuance of a replacement identification card for Christopher was consistent with Employer's policy, which permits an employee to "help [a] co-worker['s] family and friends directly." C.R. Item No. 4, Service Center Exhibit 10. Because Employer did not meet its initial burden of proving willful misconduct, the burden never shifted to Claimant to show good cause for her conduct. *Oyetayo*, 110 A.3d at 1121.[11]

Neither the Board nor Employer challenges the uncontroverted fact that the guardianship order named Christopher's parents co-guardians and that they had

---

[11] The hearing before the Referee was *de novo*. What Claimant said or did not say during Employer's investigation of her conduct did not constitute a waiver of Claimant's ability to raise the guardianship order in the unemployment proceeding. The merits of Claimant's discharge are irrelevant to Claimant's application for unemployment benefits. In any case, Beatty testified that he learned of the guardianship order in the course of Employer's disciplinary investigation of both Beardshall and Claimant.

11

a power of attorney to carry out their duties. Under the Pennsylvania Probate, Estates and Fiduciary Code (Code), guardians have the duty to "assert the rights and best interests" of their ward and may "transfer title to personal estate, or perform any other act of administration by an attorney or agent under a power of attorney." 20 Pa. C.S. §§5521(a), 3319(a). The Code provides that an "act performed by an agent pursuant to a power of attorney has the same effect … as if the principal performed the act." 20 Pa. C.S. §5601.4(g). It has long been the law in Pennsylvania that the guardian "is the personal representative of the ward while the ward lives." *In re Frew's Estate*, 16 A.2d 26, 27 (Pa. 1940). Likewise, the Code defines a guardian as a "fiduciary who has the care and management of the estate or person of a minor or an incapacitated person." 20 Pa. C.S. §102. When Beardshall requested Claimant to issue a new identification card, he made the request as Christopher's legal representative. As a matter of law, he made the request as if he were Christopher, not Christopher's father. In this respect, Employer's confidentiality policy is not even implicated because Christopher is not a co-worker of Claimant.

For the foregoing reasons, we conclude that the Board erred in determining that Claimant was ineligible for benefits under Section 402(e) of the Law. Accordingly, we reverse the Board's adjudication and remand the matter for further proceedings before the Referee to calculate the unemployment benefits owed to Claimant.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephanie E. Patnesky,                    :
              Petitioner         :
                                      :
         v.                             :    No. 591 C.D. 2017
                                        :
Unemployment Compensation Board            :
of Review,                                 :
              Respondent          :

# **O R D E R**

AND NOW, this 29th day of October, 2018, the order of the Unemployment Compensation Board of Review dated April 13, 2017, in the above-captioned matter is hereby REVERSED, and the matter is REMANDED for further proceedings in accordance with the attached opinion.

        Jurisdiction relinquished.

                                          _____

                                      MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephanie E. Patnesky,                      :
                                            :
                    Petitioner              :
                                            :
            v.                              : No. 591 C.D. 2017
                                            : Submitted: January 26, 2018
Unemployment Compensation                   :
Board of Review,                            :
                                            :
                    Respondent :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE WOJCIK                              FILED: October 29, 2018


        Pursuant to Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704, we are directed to affirm the Board's adjudication unless we determine that constitutional rights were violated, the adjudication is not in accordance with the law, or any necessary finding of fact made by the Unemployment Compensation Board of Review (Board) is not supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board*, 517 A.2d 523 (Pa. 1986). Because I believe that our scope of review precludes us from engaging in the majority's analysis, I respectfully dissent.

        Stephanie E. Patnesky (Claimant) was discharged from her employment with the Department of Transportation, Bureau of Driver Licensing (Employer) for accessing confidential information to produce a Pennsylvania

identification card for Christopher Beardshall and providing the identification card to his father, Thomas Beardshall, her coworker.  Following her discharge, the local service center determined that Claimant was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law),[1] and Claimant appealed.

At a referee's hearing, Employer offered testimony concerning its confidentiality policy and submitted a copy of the confidentiality policy into evidence.  Employer also submitted the minutes of a pre-disciplinary conference it held prior to terminating Claimant's employment.  Claimant did not object to the introduction of that transcript.  Notes of Testimony (N.T.) at 5-7, 17.

Claimant testified that she provided a replacement state identification card to her coworker for his son because she was aware that the coworker had a guardianship order that she referred to as a power of attorney (POA).  She stated she did not believe she was violating Employer's policy when she did this.  Claimant acknowledged that she admitted to violating Employer's policy during the pre-disciplinary conference, explaining that a union representative advised her that she would just get a three-day suspension.

Following the hearing, the referee affirmed the job center's determination that Claimant was ineligible for benefits under Section 402(e).

The referee's relevant findings of fact include the following:

> 3. [Employer's confidentiality policy states] that employees may not access and provide record information to a coworker so that the coworker can assist his/her family and that an employee may help a coworker's family and friends directly . . . .

*     *     *

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

5. The Claimant . . . was, or should have been aware of [that] policy.

6. [Claimant] accessed [Employer's] records of the son of a coworker and produced a replacement Pennsylvania state identification card for the coworker's son who was not present during the transaction in violation of Employer's policy.

\* \* \*

8. The Claimant understood the above to be in violation of Employer's policy.

\* \* \*

12. During [a pre-disciplinary conference] meeting, upon questioning by the Employer, the Claimant admitted to being aware of the Employer's policy, that she violated the Employer's policy by accessing a customer's record without the customer being present and producing a state identification replacement card which she provided to a coworker at [his] request and that Claimant "should have known better."

13. Prior to termination, the Employer goes through a lengthy review process once fact-finding is completed and terminations must be approved by the HR director and deputy secretary of the office of administration.

Findings of Fact, Nos. 3, 5, 6, 8, 12, 13.

The referee concluded that Employer presented sufficient competent evidence to establish the existence of its confidentiality policy, that Claimant was or should have been aware of that policy, and that Claimant violated Employer's policy by accessing information and producing a Pennsylvania state identification card for a family member of a coworker who was not present. The referee noted that "Claimant admitted to the Employer during questioning that she was aware that said

action was not authorized and that she should have 'known better.'" Referee's decision at 3.

The referee also rejected Claimant's testimony that she relied on her knowledge of an existing POA to issue the document for her coworker. In doing so, the referee cited Claimant's failure to raise that explanation at any point during her discussions with Employer. Referee's decision at 4. Finally, the referee concluded that Claimant's failure to explain the reason for her actions to Employer precluded a finding of good cause for her conduct. *Id.*

The Board adopted the referee's findings and conclusions. The Board did not rest its decision on the authenticity of the POA, but agreed with the referee's reasoning that Claimant's failure to explain her conduct to Employer vitiated her good cause argument.

On appeal to this Court, Claimant argues that the Board erred by ignoring the legal effect of the POA in determining whether Claimant committed disqualifying willful misconduct. More specifically, Claimant argues that Employer failed to prove that its policy would have required her coworker's son to be present when her coworker, acting under the authority granted to him by the POA, made the request of Claimant. Claimant asserts that because of the POA, the application presented by her coworker should have been considered as having been made by his son directly. For these reasons, Claimant argues that substantial evidence does not exist to support the Board's findings and conclusions that Claimant committed disqualifying willful misconduct under Section 402(e).

Initially, there is no question that, in creating and enforcing employment policies and workplace rules, employers are free to prohibit conduct that is not illegal, such as personal use of computers, concurrent employment, or

vulgarity. Likewise, employers may impose workplace requirements that are not imposed by governmental statute or regulation, such as safety and security procedures and reporting of absences. *See Crabbe v. Unemployment Compensation Board of Review*, 179 A.3d 1183 (Pa. Cmwlth. 2018).

In *Crabbe*, the employer informed several employees, including the claimant, that they must obtain background checks and clearances required under the Child Protective Services Law (CPSL), 23 Pa. C.S. §§6301-6386, by June 29, 2015. On July 23, 2015, after sending reminder emails, the employer advised employees who had not complied that they had 48 hours to do so. The claimant was discharged because she did not submit all her clearances by the deadline imposed by her employer. The local service center, referee, and the Board held that she was discharged for willful misconduct rendering her ineligible for benefits.

On appeal to this Court, we rejected the claimant's contention that the employer had not given her accurate legal deadlines for obtaining clearances and held that the claimant had waived this argument. Alternatively, we explained:

> even if the issue were not waived, [c]laimant's argument would fail, as [e]mployer's alleged mistaken reading of the [CPSL] and the referee's inclusion of a finding regarding compliance deadlines for new volunteers, which was inapplicable to [c]laimant, had no impact upon the referee's conclusion that [c]laimant's actions amounted to willful misconduct. Essentially, [c]laimant argues that because, in retrospect, she has identified that [e]mployer's rule regarding the July 1, 2015 deadline was, in her opinion, based upon an erroneous reading of Act 15, an error which the referee did not realize, [c]laimant's choice not to comply with the [e]mployer's rule was excusable because the rule was unreasonable.

179 A.3d at 1190. We agreed with the Board that, regardless of the fact that the statutory deadline for obtaining clearances was December 31, 2015, both parties understood the employer's deadline to be the earlier date.

As in *Crabbe*, Claimant and Employer understood her actions to be in violation of Employer's policy. By basing its decision on the validity and legal effect of the POA, the majority fails to recognize the distinction between conduct that is legally permissible and rules of conduct an employer has the right to adopt in its workplace. Thus, the majority errs in holding that because Claimant's conduct was permitted by law, it did not violate Employer's policy.

Further, while the majority determines that the referee "misread" Employer's policy, the only relevant interpretation is the parties' understanding of Employer's work rule. *Crabbe*. Whether the referee, or this Court, would interpret the language of that policy differently is of no moment. In this appeal, our appellate role is not to offer a correct *legal* interpretation of the policy. Rather, we are to consider only whether the Board's findings are supported by substantial evidence, and, if so, whether the Board's findings support the Board's legal conclusion. The Board's findings that Employer and Claimant understood the policy to prohibit Claimant's conduct are supported by the testimony and documentary evidence of record. Even if this Court would interpret the evidence differently, the evidence relied on by the Board supports the Board's findings that Employer's policy prohibited giving information to a person other than the named customer. Claimant's admissions at the pre-disciplinary conference support the Board's findings that she was aware her conduct violated Employer's policy. Claimant failed

to demonstrate good cause for her actions because the Board rejected Claimant's testimony that she relied on her knowledge of the POA as not credible.[2]

Respectfully, that should be the end of our inquiry. In considering testimony that the policy does not contemplate POAs, does not specifically require the physical presence of an individual subject to guardianship, and/or reflects an ambiguity, the majority strays from the bounds of appropriate appellate review by considering evidence that would support a contrary determination[3] and by addressing an issue that is not raised on appeal. Pa. R.A.P. 2116.

Our Supreme Court has repeatedly admonished that this Court is not to indulge in the process of weighing of evidence and resolving conflicting testimony. *See, e.g.*, *Popowsky v. Pennsylvania Public Utility Commission*, 706 A.2d 1197, 1201 (Pa. 1997) (Commonwealth Court exceeded its scope of review and erred by failing to give deference to the views of the agency). *See also*, *Commonwealth v. Korchak*, 483 A.2d 1360, 1361 (Pa. 1984) (appellate courts are limited to an examination of the testimony to determine whether the findings of fact are supported

---

[2] Additionally, the Board correctly held that Claimant's failure to raise the POA as a reason for her actions to Employer precluded her from asserting its existence as justification for her conduct on appeal.

[3] The fact that a witness has presented a version of the facts different from that accepted by the Board is not a basis for reversal if substantial evidence supports the Board's findings. *Tapco, Inc. v. Unemployment Compensation Board of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). "It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made." *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citation omitted). "In an unemployment compensation case, the findings of fact made by the Board, or by the referee, *are conclusive on appeal* so long as the record, taken as a whole, contains substantial evidence to support those findings." *Brandt v. Unemployment Compensation Board of Review*, 643 A.2d 78, 79 (Pa. 1994) (emphasis added) (citing *Vann v. Unemployment Compensation Board of Review,* 494 A.2d 1081, 1086 (Pa. 1985); *PenFlex, Inc. v. Bryson,* 485 A.2d 359, 365 (Pa. 1984); *Soja v. Pennsylvania State Police*, 455 A.2d 613, 618 (Pa. 1982)).

by competent evidence and to correct any erroneous conclusions of law); *St. Joseph's Hospital v. Pennsylvania Labor Relations Board*, 373 A.2d 1069, 1071 (Pa. 1977) (the scope of an appellate court's review is limited to determining whether the Board's findings are supported by substantial evidence and whether the conclusions drawn from those facts are reasonable, and not capricious, arbitrary, or illegal).

For the above reasons, I would affirm.

 

 

_____

MICHAEL H. WOJCIK, Judge