# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James P. Rice,                          :
                    Petitioner          :
                                        :
        v.                              :    No. 659 C.D. 2020
                                        :    Submitted: June 10, 2022
Unemployment Compensation               :
Board of Review,                        :
                    Respondent          :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                         FILED: September 15, 2022

        James P. Rice (Claimant) petitions for review of an adjudication of the
Unemployment Compensation (UC) Board of Review (Board). The Board held that
Claimant was ineligible for unemployment compensation benefits under Section
402(e) of the Unemployment Compensation Law (Law)[1] by reason of willful
misconduct. Concluding that the employer did not prove a violation of its work rule,
we reverse the Board.

## Background

        Claimant began working full time for Mars Home for Youth
(Employer) as an electronic monitoring specialist in 2004. He was discharged on
December 6, 2019, for violating Employer's confidentiality policy. Claimant

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751-
919.10. Section 402(e) of the Law provides that an employee shall be ineligible for compensation
for any week in which his unemployment is due to his discharge or temporary suspension from
work for willful misconduct connected with his work. 43 P.S. §802(e).

applied for unemployment compensation benefits, which the Indiana UC Service Center denied pursuant to Section 402(e) of the Law. Claimant appealed, and a hearing was conducted by a Referee.

At the hearing, Employer presented the testimony of Elizabeth Hays, its director of human resources. She explained that Employer, *inter alia*, monitors juveniles who have been placed on probation by the county juvenile court system. Employer's confidentiality policy states, in relevant part, as follows.

> [Employer's] clients and other parties with whom we do business entrust [Employer] with privileged information related to their needs and business. *It is our policy that all such information is considered confidential and will not be disclosed to external parties or to employees without a "need to know."*

Certified Record at 139 (C.R.____); Item 13, Employer Exhibit 1, at 2 (emphasis added). A violation of this confidentiality policy is a "terminable offense," according to Hays. Notes of Testimony, 2/21/2020, at 8 (N.T.___); C.R. 112. On cross-examination, Hays testified that a probation officer would be a good example of a third party who needs to know a client's confidential information. N.T. 10; C.R. 114. For other parties, "[i]t would depend on the urgency of the situation." *Id.* Claimant was discharged for sharing the age of a client with the principal of a school that employed the client as a classroom helper.

Employer also presented the testimony of Lukas Carothers, Claimant's supervisor. Carothers testified that Claimant admitted that he shared a client's age with the principal of a school. Carothers explained that if an employee needs to disclose a client's confidential information out of a safety concern, the employee should contact "the probation officer of that youth" or the "home provider" or secure "an appropriate consent and release of information." N.T. 14; C.R. 118. On cross-examination, Carothers clarified that in an "imminent situation," where "the youth

2

or somebody was going to commit some type of crime or . . . cause harm," the employee should report the information to law enforcement or, "hypothetically," a school principal, where there is a threat to the school. N.T. 17; C.R. 121.

Claimant presented the testimony of Stephen Dobransky, the school principal. Dobransky knew Claimant as a parent of a student attending the school. Dobransky testified that on November 18, 2019, at approximately 7:15 a.m., Claimant came to his office and asked, "what was the age that someone could be to work for the district?" N.T. 23; C.R. 127. Dobransky replied that it was 18. *Id*. Claimant said, "what if I told you somebody here was not 18?" *Id.* Dobransky testified that based upon this information, he was able to identify the particular juvenile because he was a new employee. Dobransky confronted the juvenile about his age and discharged him because it is "not appropriate or acceptable" for someone under the age of 18 to work in a classroom with minor children. N.T. 24; C.R. 128.

Claimant also testified about the incident for which he was discharged. The relevant testimony follows:

> [Counsel:] . . . . You are not denying that you advised the school district that there was a 17-year-old that was working there?
>
> [Claimant:] That's correct. That was his first day. And, since he informed me over the weekend that he would be needing a window to work that Monday morning, when I dropped my son off, since I was there, I went in to find out if he was eligible to work there. It didn't sound right that a minor's allowed to work in a school district. So, when I walked in, the principal was standing outside the office. I asked him what the requirements were for a paraprofessional.
>
> [Counsel:] You did not turn over this young man's name, correct?
>
> [Claimant:] I did not.
>
> [Counsel:] If the answer to the question was, it was acceptable for a 17-year-old to be working as a paraprofessional, that would've been the end of it for you, correct?

3

[Claimant]: Correct.  That is enough.

\* \* \*

[Counsel:] . . . . What was the concern that you had about finding out that this young man was there at the school?

[Claimant:] My concern was that – his age.  I can't imagine that you could be a minor working with juveniles in a school district.  And since I was already there, I went in.

\* \* \*

[Counsel:] Did you feel that the school had a need to know that there was an issue?

[Claimant:] I believe so.  I mean, if you were a parent and you had a 13-year-old kid in that school, would you want a minor in their classroom?

N.T. 26-28; C.R. 130-32.   Claimant testified that Employer had given him "discretion to deal with issues that arise" and to take "immediate action" in situations involving a safety concern.   N.T. 28; C.R. 132.

The Referee affirmed the UC Service Center's denial of unemployment compensation.  The Referee found that Employer's confidentiality policy prohibited Claimant from sharing the juvenile's age information with the school principal.  Claimant did not advise the appropriate probation officer that the juvenile was about to start a job for which he was not qualified.  Rather, Claimant revealed the juvenile's age to the school principal because he was concerned for the welfare of Claimant's child.  The school principal then identified and discharged the juvenile on the basis of the information Claimant provided.  On these factual findings, the Referee concluded that Employer met its burden of proving that Claimant was discharged for violating Employer's confidentiality policy, which constituted willful misconduct.  The burden then shifted to Claimant to show good cause for his conduct.  However, the Referee concluded that Claimant did not carry this burden.

4

There were no exigent circumstances that prevented Claimant from contacting the juvenile's probation officer and allowing the officer to handle the matter.

On appeal, the Board added a finding that Claimant "was aware or should have been aware of [Employer's] policies," and it removed a finding made by the Referee that Claimant "was aware that the school required employees to be at least 18 years of age" for the stated reason that this finding is "not explicitly precise and is irrelevant." Board Adjudication, 5/20/2020. The Board adopted the remainder of the Referee's findings of fact and conclusions of law and affirmed the Referee's decision. The Board rejected Claimant's argument that there was an urgency to the school principal's need to know that the client was not 18 years old. The Board opined that urgency involves "a direct threat or future crime, neither of which apply here." *Id*.

Claimant petitioned for this Court's review.[2]

**Appeal**

On appeal, Claimant raises one issue for our consideration.[3] Claimant argues that the Board erred in holding that he violated Employer's confidentiality

---

[2] Our review determines whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial competent evidence. *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

[3] Claimant's statement of questions involved lists one question: "Whether [Claimant's] unemployment was due to discharge or temporary suspension from work for willful misconduct connected with his employment." Claimant Brief at 4. The arguments contained in Claimant's brief, however, raise a separate issue: whether Claimant's actions in violating Employer's confidentiality policy are protected by the Whistleblower Law, Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§1421-1428. Pursuant to PA. R.A.P. 2116, the statement of questions involved "must state concisely the issues to be resolved," and "[n]o question will be considered unless it is stated in the statement of questions involved or fairly suggested thereby." For this reason, we will not address Claimant's issue raised under the Whistleblower Law. Additionally, it is unnecessary for the Court to consider Claimant's Whistleblower Law issue in light of our disposition of Claimant's other issue on appeal.

5

policy. Claimant asserts that he did not disclose confidential information but, rather, "the hypothetical existence of a minor[-]aged employee," and the school principal "took it upon himself to investigate the matter and discovered the juvenile employee through his own efforts." Claimant Brief at 9, 11. Employer's confidentiality policy provides that a client's confidential information cannot be disclosed to anyone without a "need to know," but it does not define what that means with any specificity. Claimant asserts that the principal "needed to know" the juvenile's age information to ensure the well-being of the students in the building. As Dobransky testified, it is not appropriate or acceptable to have a minor employed to work in a classroom with other minor-aged children.

In the alternative, Claimant argues that he violated the confidentiality policy for good cause because he, as a mandatory reporter under the Child Protective Services Law,[4] was under an affirmative duty to report anything that threatens the safety of minor students in the school district. This includes the presence of a juvenile in the classroom working as a paraprofessional with minor children.

Employer responds that Claimant's so-called "hypothetical questions" about the school's minimum age requirement enabled the school principal to identify the juvenile. Employer Brief at 12. Claimant's status as a mandatory reporter under the Child Protective Services Law is irrelevant because the incident for which he was discharged did not involve suspected child abuse. Employer further asserts that the school principal did not need to know the juvenile's age "right then, that minute," because there was no immediate danger. Employer Brief at 14. The juvenile was there to support a classroom teacher, and he did not present an immediate risk or

---

[4] Section 6303 of the Child Protective Services Law defines a "mandatory reporter" as "[a] person who is required by this chapter to make a report of suspected child abuse." 23 Pa. C.S. §6303.

make any threats.  Employer contends that Claimant had ample opportunity to take "appropriate notification actions," such as contacting the juvenile's probation officer, but he chose not to do so.  Employer Brief at 15.

In unemployment cases, the initial burden of proving willful misconduct lies with the employer.  *Oyetayo v. Unemployment Compensation Board of Review*, 110 A.3d 1117, 1121 (Pa. Cmwlth. 2015).  Although not defined in the Law, willful misconduct has been interpreted to include:

> (i) wanton and willful disregard of the employer's interests; (ii) a deliberate violation of the employer's rules; (iii) a disregard of the standards of behavior that the employer rightfully can expect from its employees; and (iv) negligence that manifests culpability, wrongful intent or evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations.

*Id.*  Where an employer seeks to deny unemployment compensation benefits based on a work rule violation, the employer must show that the rule existed; that the rule was reasonable; and that the claimant was aware of and violated the rule.  *Id.*  "If the employer makes that showing, the burden shifts to the claimant to show good cause for his conduct."  *Id.*

The Board is the ultimate finder of fact and is empowered to make credibility determinations.  "When the Board's findings of fact are supported by substantial evidence, that is such evidence a reasonable mind might accept as adequate to support a conclusion, those findings are conclusive on appeal."  *Id.* at 1122.  However, whether an employee's actions constitute willful misconduct is a question of law fully reviewable by this Court.  *Id.*

We begin with a review of the confidentiality policy that Claimant was found to have violated.  It states as follows:

7

> [Employer's] clients and other parties with whom we do business entrust [Employer] with privileged information related to their needs and business. *It is our policy that all such information is considered confidential and will not be disclosed to external parties or to employees without a "need to know."*
>
> Similarly, employees may at times become aware of information related to others' work situations or personal matters. Such information also is not to be disclosed without a "need to know."
>
> If there is a question of whether certain information is considered confidential, the employee should first check with his/her immediate supervisor.
>
> *This policy is intended to alert employees to the need for discretion at all times and is not intended to inhibit normal business communications*.

C.R. 139; Item 13, Employer Exhibit 1, at 2 (emphasis added).

The confidentiality policy prohibits disclosure of a client's confidential information to third parties lacking a "need to know," but it does not specify who has the "need to know" or what constitutes "need." Hays, Employer's director of human resources, opined that a probation officer is a person with a "need to know;" for others, it depends "on the urgency of the situation." N.T. 10; C.R. 114. The Board adopted Employer's interpretation of its policy that there must be an urgent reason to justify disclosure of the juvenile's information to a third party. However, the confidentiality policy does not state that the need must be an urgent need.

In *Adams v. Unemployment Compensation Board of Review*, 56 A.3d 76 (Pa. Cmwlth. 2012), the claimant sought review of the Board's adjudication denying him unemployment compensation benefits for willful misconduct. The employer had a work rule requiring that employees "must notify [their] employer of any arrest or conviction while employed." *Id*. at 78. The claimant was directed to appear before a magistrate; however, he was not handcuffed or taken into custody. The employer learned of the incident through a third party and discharged the

8

claimant for violating the work rule. On appeal, the claimant argued that he was not "arrested" when compelled to report to a magistrate and, therefore, was under no obligation to notify the employer of the criminal charges. We agreed that the claimant had not been "arrested." The claimant's liberty was not affected, as the term "arrest" is commonly understood. *Id.* at 79. Nor did the employer's work rule define "arrest" to include a filing of charges. Because the employer's work rule specified "any arrests or convictions," not charges, we held that the Board erred in the interpretation of the work rule. *Id*. at 80.

*Patnesky v. Unemployment Compensation Board of Review*, 200 A.3d 107 (Pa. Cmwlth. 2018), concerned the denial of unemployment compensation benefits for violating the employer's confidentiality policy. There, the claimant worked for the Pennsylvania Department of Transportation (PennDOT) as a driver's license examiner assistant. Under PennDOT's confidentiality policy, employees were forbidden to use PennDOT's information for personal reasons or to assist their family or friends. However, the policy expressly authorized employees to assist their co-worker's family and friends "directly" so long as the assistance was an assigned job responsibility. *Patnesky*, 200 A.3d at 112-13. The claimant produced a replacement identification card for the incapacitated child of her co-worker, who had power of attorney to act on the child's behalf. The Board found a violation of the policy because the employee indirectly assisted a co-worker. This Court reversed.

We held that the claimant did not violate the confidentiality policy because the issuance of a replacement identification card was the claimant's job responsibility. *Id*. at 113. PennDOT's policy was silent on the processing of applications presented by a co-worker acting under a guardianship order. It did not require the incapacitated child be present when the guardian requested an

9

identification card on his behalf. *Id*. at 113-14. We concluded that PennDOT failed to prove that the claimant violated a work rule, and, as such, the burden did not shift to the claimant to show good cause for her conduct.

Here, Employer's confidentiality policy states that client information "*will not be disclosed to external parties or to employees without a 'need to know*.'" C.R. 139; Item 13, Employer Exhibit 1, at 2 (emphasis added). The policy is silent on who has the "need to know" a client's confidential information and the circumstances under which the information can be revealed. The Board found that Claimant violated the policy because there was no imminent risk of harm to justify Claimant's disclosure of the juvenile's age. The juvenile was working in a classroom, as opposed to making a threat. However, the policy does not state that disclosure of confidential information can only be made where there is a threat of harm. Nor does it matter that Claimant disclosed the juvenile's age because he was concerned for the welfare of Claimant's own child. The policy simply prohibits disclosure of confidential information to "external parties or to employees *without a 'need to know*.'" *Id*. (emphasis added).

Claimant testified that he believed the principal needed to know that there was a juvenile working with minor students in the school's classrooms. Employer acknowledges that it was impermissible for a juvenile to work in the school classroom and that Claimant should have taken action "upon his learning that the [juvenile] might be working in [the] school." Employer Brief at 15. Employer disagrees with Claimant's chosen course of action. Instead of speaking with the school principal, Employer argues Claimant should have referred the matter to the juvenile's probation officer, the home provider, or Claimant's supervisor. *Id*.

10

We reject this argument. The confidentiality policy did not state that an employee must contact the probation officer or the home provider before disclosing confidential information to a third party with a "need to know." Claimant was not required to consult with his supervisor unless he has "a question of whether certain information is considered confidential." C.R. 139; Item 13, Employer Exhibit 1, at 2. Indeed, Employer's confidentiality policy gave employees the discretion to disclose confidential information where appropriate to those with a "need to know." The policy states that it is not intended to "inhibit normal business communications." *Id.*

Where an employer discharges an employee for a work rule violation, the employer has the burden of proving the rule's existence, its reasonableness, and its violation. *Oyetayo*, 110 A.3d at 1121. The employer must also show that the claimant's violation of the work rule was intentional and deliberate. *Cambria County Transit Authority ("CamTran") v. Unemployment Compensation Board of Review*, 201 A.3d 941, 950 (Pa. Cmwlth. 2019) (citing *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425-26 (Pa. 2003)). Here, Claimant shared the juvenile's age information with the school principal, a person he believed to have a "need to know." C.R. 139; Item 13, Employer Exhibit 1, at 2. Employer's confidentiality policy gave Claimant the discretion to make a disclosure in these circumstances. It did not require a risk of harm, and it did not direct employees to report to the juvenile's probation officer, or home provider, or their supervisor before making a disclosure to a third party believed to have a need to know. Accordingly, Employer did not prove that Claimant acted in deliberate and willful violation of Employer's confidentiality policy.

11

## Conclusion

For the foregoing reasons, we hold that the Board erred in determining that Claimant engaged in disqualifying willful misconduct under Section 402(e) of the Law. We thus reverse the Board's May 20, 2020, adjudication and remand the matter for further proceedings for a calculation of the unemployment benefits owed to Claimant.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Wallace did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James P. Rice,                          :
                  Petitioner            :
                                        :
        v.                              :        No. 659 C.D. 2020
                                        :
Unemployment Compensation               :
Board of Review,                        :
                  Respondent            :

# **O R D E R**

AND NOW, this 15th day of September, 2022, the May 20, 2020, order of the Unemployment Compensation Board of Review, in the above-captioned matter, is REVERSED. This matter is REMANDED for further proceedings in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita